EISMANN, Justice.
This is an appeal out of the Second Judicial District contending that the district court failed to secure an express waiver from the defendant of his right to a jury trial before proceeding with a court trial. Because the aberrant procedure used by the district court was, in essence, a guilty plea and not a court trial, we affirm the judgment of the district court.
I.
Factual Background.
On August 30, 2012, an information was filed charging Gerald K. Umphenour with possession of methamphetamine, a felony, and with resisting and obstructing an officer and having an open container of alcohol in a motor vehicle, both misdemeanors. He entered a plea of not guilty to the charges, and the district court set a jury trial to commence on May 22, 2013, at 9:00 a.m.
About fifteen minutes before the jury trial was scheduled to commence, the district court went on the record with the prosecutor, Mr. Umphenour, and his counsel present. The court stated that both counsel had a proposal to “stipulate to certain facts, and that the Court would make findings based upon those facts.” Mr. Umphenouris counsel agreed and said that he had gone over with Mr. Umphenour the district court’s proposed jury instruction setting forth the elements of the ciime of possession of methamphetamine and that Mr. Umphenour would stipulate that those elements of the crime were true. In addition, the State would dismiss the two misdemeanors, Mr. Umphenour would remain free on bond, the sentencing would occur at a later time, and there was no agreement regarding any recommended sentence.
Mr. Umphenour’s counsel read the four elements of the crime as set forth in the jury instruction: “[1] On or about June 6th; [2] in the State of Idaho; [3] Gerald K. Umphenour possessed any amount of methamphetamine; and four, the defendant either knew it was methamphetamine or believed it was a controlled substance.” The prosecutor also stipulated to those facts. The district court *505 asked Mr. Umphenour if he was stipulating or agreeing to the facts as recited by his attorney, and Mr. Umphenour answered, “Yeah.”
After reciting the terms of the agreement, the court asked, “And so it’s my understanding that both counsel want me to make a finding with respect to guilt or innocence based upon the stipulation that’s been entered into by both parties?” Mr. Umphen-our’s counsel and the prosecutor both said that was correct. The court then stated that based upon the stipulation it found the facts to be as recited by Mr. Umphenour’s counsel and that “[biased upon those stipulated facts and findings, the Court does find that Mr.-Umphenour is guilty of the offense in count one, that is, possession of a controlled substance.”
The district court ultimately sentenced Mr. Umphenour to the custody of the Idaho Board of Correction for a term of four years, with the first six months fixed and the remainder indeterminate. The court also imposed court costs of $265.50, a fine of $500.00, and restitution to the state police forensics laboratory in the amount of- $100.00. Mr. Umphenour timely appealed.
The appeal was initially heard by the Idaho Court of Appeals, which vacated Mr. Umphenour’s conviction on the ground that the district court had conducted a court trial without first obtaining Mr. Umphenour’s personal, express waiver of his right to a jury trial. We granted the State’s petition for review. In cases that come before this Court on a petition for review of a decision of the Court of Appeals, we do not review the decision of the Court of Appeals, We hear the case anew as if the appeal had come directly to this Court. State v. Suriner, 154 Idaho 81, 83, 294 P.3d 1093, 1095 (2013).
II.
Was Mr. Umphenour deprived of his constitutional right to a jury trial, under both the Idaho and United States Constitutions, when the district court held a court trial in the absence of any waiver of that right by Mr. Umphen-our?
Mr. Umphenour contends that his judgment of conviction must be set aside because “his constitutional right to a jury trial was violated when his guilt was found by the district court, rather than a jury, in the absence of a personal waiver.” To address that issue, we must first determine the nature of what occurred in the district court on May 22, 2013. Was it a court trial or was it a guilty plea? It is clear that it was a guilty plea.
The information charged Mr. Um-phenour with possession of methamphetamine as follows: “That the Defendant, GERALD K. UMPHENOUR, on or about the 6th day of June, 2012, in the City of Orofino, County of Clearwater, State of Idaho, did willingly, knowingly, intentionally and unlawfully possess a controlled substance, to-wit: Methamphetamine, a Schedule II narcotic drug.” The district court’s proposed jury instruction accurately set forth the elements of the crime charged.[1] Admitting the elements of the crime alleged in the charging document is simply pleading guilty to the crime charged. As the United States Supreme Court stated in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), “Central to the plea and the foundation for entering judgment against the defendant is the defendant’s admission in *506 open court that he committed the acts charged in the indictment.” Id. at 748, 90 S.Ct. at 1468-69, 25 L.Ed.2d at 757. By admitting the elements of the crime, Mr. Umphenour admitted the acts charged in the information.
Once Mr. Umphenour admitted the elements of the crime charged, there was nothing to be tried by the district court. It was agreed that the two misdemeanors would be dismissed. A trial is “[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding.” Black’s Law Dictionary 1610 (7th ed.1999). A court trial is: “A trial before a judge without a jury. The judge decides questions of fact as well as questions of law.” Id. There were no questions of fact for the district court to decide, and the court did not find any facts. The only issue for the court was whether Mr, Umphenour’s admission of the four elements set forth in the court’s proposed jury instruction was sufficient for the court to conclude that Mr. Umphenour was guilty of the crime. That was no different from a defendant admitting as true the allegations in the charging document and the court then accepting the defendant’s guilty plea. When accepting a guilty plea, the court does not conduct a court trial. It is apparent that Mr. Umphenour understood that what occurred was, in essence, a guilty plea because he later filed a pro se motion seeking to withdraw his guilty plea.
By holding that what occurred tyas in reality a guilty plea, we are not endorsing the aberrant procedure conducted by the district court in this case. The parties did not explain why they chose such a deviation from established procedures. One possibility is that the court minutes for February 19, 2013, state that Mr. Umphenour pled guilty, but the court refused to accept his guilty plea after hearing his explanation of the circumstances. The minutes do not state what explanation he gave, only that after hearing it the couid; refused to accept the guilty plea. It may be that the procedure conducted here was concocted by counsel and accepted by the court as being a form of an Alford plea. If the case could not have been resolved by a guilty plea, whether it was an admission -of acts constituting the crime or an Alford plea, then the court should have proceeded with the jury trial. The jury was waiting, and the witnesses had been subpoenaed.
The procedure adopted simply created fertile ground for an appeal and possibly post-conviction relief. A guilty plea “is more than an admission of past conduct; it is the defendant’s consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge.” Brady, 397 U.S. at 748, 90 S.Ct. at 1468-69, 25 L.Ed.2d at 757. Mr. Umphenour obviously knew he was giving up his right to .a jury trial. The waiver of that right need not be express. State v. Colyer, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). “Although the record must show that the defendant waived his constitutional rights and understood the consequences of pleading guilty, we think it is sufficient if such waiver or understanding can be fairly inferred from the record as a whole.” Id. Mr, Umphenour’s waiver of his right to a jury trial can be fairly inferred from the record as a whole in this case.[2]
*507 In holding that his waiver of the right to a jury trial could be fairly inferred, we are only referring to a waiver of that right in connection with a guilty plea. We express no opinion as to whether it would have been adequate had he really waived a jury trial and had a court trial. We also admonish courts to obtain an express waiver of the right to a jury trial when accepting a guilty plea. Again, what the district court did here simply created fertile ground for an appeal and for post-conviction relief.
In addition to the right to a trial by jury, there are other requirements for a constitutional guilty plea. “Whether a plea is voluntary and understood entails inquiry into three areas: (1) whether the defendant’s plea was voluntary in the sense that he understood the nature of the charges and was not coerced; (2) whether the defendant knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) whether the defendant understood the consequences of pleading guilty.” Colyer, 98 Idaho at 34, 557 P.2d at 628.
In his dissent, Justice Horton raises the issue that the record on appeal does not show that the district court advised Mr. Umphen-our of his rights to confront his accusers and to refrain from incriminating himself and of the consequences of pleading guilty. If that issue had been raised on appeal, I would agree that the judgment must be vacated.
On appeal, Mr. Umphenour has not-challenged his guilty plea on the ground that the record does not reflect that he was advised of and waived his rights to confront his accusers and to refrain from incriminating himself and that he was informed of and understood the consequences of pleading guilty. The transcript of the proceedings on May 22, 2013, does not include any indication that those matters were addressed by the district court, and the record on appeal is insufficient to conclude that he waived these rights and understood the consequences of pleading guilty. The court minutes of Mr. Umphen-our’s arraignment state; “Defendant understands charges”; “Court advises of rights”; “Defendant understands his rights, the possible penalties and the charges against him”; “Court adrises of the rights he will give up upon a guilty plea”; and “Defendant advises he understands the rights he will give up upon a plea of guilty.” ' However, there is no transcript in the record on appeal that shows what was actually said by the district court and Mr. Umphenour during this exchange. We ’ cannot presume that Mr. Umphenour was properly advised by the district court of his rights, of the possible penalties, and of the rights he would waive if he pled guilty. The failure of appellate counsel to raise this issue on appeal is either the result of ineffective assistance of appellate counsel or of knowing what Mr. Umphenour was told in the' prior proceedings, since the State Appellate Public Defender typically obtains transcripts of all of the court hearings in a case.
III.
Did the District Court Abuse Its Discretion in Denying Mr. Umphenour’s Motion to Withdraw His Guilty Plea?
Anticipating that the proceedings on May 22, 20Í3, may be construed to be a guilty plea rather than a court trial, Mr. Umphenour contends that the district court abused its discretion in ruling that it did not have jurisdiction to hear his motion to withdraw his guilty plea.
On September 27, 2013, Mr. Umphenour filed a pro se notice of appeal. The state appellate public defender was then appointed to represent him on appeal, and on November 20, 2013, it filed an amended notice of appeal. On June 5, 2014, Mr. Umphenour filed a pro se Motion for Commutation of Sentence, Suspension of Execution of Judgment and Placement on Supervised Probation / Drug Court or Manifest Injustice for *508 Withdraw [sic] of Plea. He also filed a motion and affidavit in support of appointment of counsel and a motion for a hearing so that he could present oral argument in support of a motion for reduction of his sentence. On June 10, 2014, the district court issued an Order Denying Motions, in which it stated that Mr. Umphenour had filed “a motion for appointment of counsel; a motion to withdraw his plea of guilty pursuant to ICR 33(c); and a motion for commutation of his sentence pursuant to ICR 33(d).” The court did not rule on the motions, but simply held, “This court does not have jurisdiction to hear these motions.” However, on January 6, 2015, the court issued an Order Denying Motion in which it denied Mr. Umphenour’s pro se motion to withdraw his guilty plea.
Upon the filing of Mr. Umphenour’s notice of appeal, the district court had no jurisdiction to take any action in the case except as permitted in Idaho Appellate Rule 13, State v. Lemmons, 158 Idaho 971, 974, 354 P.3d 1186, 1189 (2015), or Idaho Appellate Rule 13.3(a), which provides that before an opinion is issued, this Court may remand a case on appeal to the district court to take further designated action. Because we did not remand this case to the district court pursuant to Rule 13.3(a), Rule 13(c) sets forth the power and authority of the district court to rule on motions and take actions while this case is on appeal. The only provision of that rule that is arguably applicable to a motion to withdraw a guilty plea is subsection 13(c)(10), which states that the court can “[e]nter any other order after judgment affecting the substantial rights of the defendant as authorized by law.” Mr. Umphenour has not cited any law authorizing a district court to rule on a motion to withdraw a guilty plea while the case is on appeal, nor are we aware of any such law. Therefore, the district court did not have jurisdiction to rule on his motion to withdraw his guilty plea.
IV.
Conclusion.
We affirm the judgment of the district court.
Chief Justice J. JONES and Justice W. JONES concur.

.The district court’s proposed jury instruction is not in the record. From Mr, Umphenour’s counsel’s reading of the instruction, it was obviously based upon ICJI 403. Thus, the jury instruction would have been as follows: ,
In order for the defendant to be guilty of Possession of a Controlled Substance, the state must prove each of the following:
1. On or about June 6th
2. in the state of Idaho
3. Gerald K. Umphenour possessed any amount of methamphetamine, and
4.the defendant either knew it was methamphetamine or believed it was a controlled substance.
If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.
We have previously held that ICJI 403 accurately sets forth the elements of the crime of possession of a controlled substance. State v. Blake, 133 Idaho 237, 241 n. 1, 985 P.2d 117, 121 (1999).

. This case was initially set for a jury trial to commence on February 4, 2013, and a pretrial to be held on January 22, 2013. The court minutes for the pretrial state that Mr. Umphenour was present and that his attorney advised the court that there was a resolution of the case, that the jury trial should be vacated, and that the case should be set for a change of plea. The minutes reflect that the court then set the case for a change of plea on February 19, 2013, and vacated the jury trial. The court approved and signed the minutes.
On February 19, 2013, Mr. Umphenour pled guilty to the charge of possession of methamphetamine, but the district court refused to accept the guilty plea after hearing Mr. Umphen-our's explanation of what had occurred. The case was ultimately reset for a jury trial to commence at 9:00 a.m. on May 22, 2013. The proceeding to resolve the case occurred on that date about fifteen minutes before the jury trial was to begin. Mr, Umphenour obviously did not just happen to be in the courthouse on that day. Under the agreement stated on the record, he would stipulate to the elements of the possession charge as set forth in the jury instruction, he would remain free on bond, the sentencing would be later, and the two misdemeanors would be dismissed. The district court advised him that it would be at least eight weeks before the sentencing would occur because "it does take a little bit of time in order to get a sentencing packet or what they call- a presentence report, *507 and they usually do a substance abuse screening when it’s this type of charge, and that's usually done as part of the packet,” ■
Mr. Umphenour obviously did not think that the matter would then be tried to a jury. At the conclusion of the proceeding, the court asked him, "When did you want to go to work in North Dakota, or are you working there now?” He answered: "I was supposed to leave already, but I didn't go yet. I was waiting to get this taken care of,”